EOC:MAA
F.#2003R02536

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JAN 2 6 2005 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

FRANK DOLNEY,
QUENTIN QUINTANA, also known as
   "Christopher Quintana,"
WILLIAM G. BROWN,
GARY TODD and
VLAD GOLDENBERG,

          Defendants.

- - - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 04-159 (S-1)(NGG)
(T. 15, U.S.C., §§ 78j(b)
and 78ff; T. 18, U.S.C.,
§§ 371, 981(a)(1)(C),
982(a)(1), 1956(a)(1)(A)(i),
1956(a)(1)(B)(i), 1956(h),
2 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

## INTRODUCTION

      At all times relevant to this Superseding Indictment,
unless otherwise indicated:

The Brokerage Firms

      1.   L.H. Ross & Company, Inc. ("L.H. Ross") was a
broker-dealer of securities registered with the Securities and
Exchange Commission ("SEC") and the National Association of
Securities Dealers, Inc. ("NASD").  L.H. Ross's principal office
was located in Boca Raton, Florida.  In or about and between June
1999 and October 2001, L.H. Ross maintained a branch at 30 Broad
Street, New York, New York ("L.H. Ross's Manhattan branch").
L.H. Ross's Manhattan branch employed licensed stock brokers,

also referred to as "registered representatives," and unlicensed stock brokers who sold securities to L.H. Ross's clients.

2.    Delta Asset Management ("Delta") was a broker-dealer of securities registered with the SEC and the NASD. Delta's principal office was located at 300 Old Country Road, Mineola, New York.  In or about October 2000, Delta opened a branch office at 100 St. Mary's Avenue, Staten Island, New York ("Delta's Staten Island branch").  In or about October 2001, L.H. Ross's Manhattan branch was converted into another Delta branch office.  The L.H. Ross and Delta branch offices located at 30 Broad Street are referred to collectively as the "30 Broad Street branch" in the following paragraphs of this Indictment.  Delta's branch offices employed licensed stock brokers, also referred to as "registered representatives," and unlicensed stock brokers who sold securities to Delta's clients.

The House Stocks

3.    In or about and between June 1999 and October 2003, stock brokers employed at L.H. Ross and Delta solicited retail clients to purchase common stock and stock warrants that had been issued by several thinly capitalized start-up companies (the "House Stocks").  The House Stocks included securities that were publicly traded on the NASDAQ Small Capitalization, Over-the-Counter Bulletin Board and "Pink Sheet" stock markets.  The House Stocks, each followed by the abbreviation used in

connection with public trading of the stock, included, among others, the following:

   a.   GeneThera, Inc., "GTHA," and its predecessor company Hand Brand Distribution, Inc., "HDBD" (hereinafter referred to collectively as "GeneThera");

   b.   Canterbury Information Techology, Inc., "CITI" (hereinafter referred to as "Canterbury");

   c.   E.Machinery Net, Inc., "EMAC," and its predecessor company Harvard Financial Services Corp., "HRVD" (hereinafter referred to collectively as "E.Machinery");

   d.   Syndicated Food Service International, Inc., "SYFS," and its predecessor company Floridino's International Holdings, Inc., "FDNO" (hereinafter referred to collectively as "Floridino's"); and

   e.   Aviation Innovations & Research, Inc., "AVRI," and its predecessor company Elite Brands International, Inc., "EBRD" (hereinafter referred to collectively as "AVRI").

<u>The Defendants</u>

   4.   In or about and between January 1999 and June 2002, the defendant FRANK DOLNEY served as a member of the board of directors of Floridino's. DOLNEY also served as Secretary and Treasurer of Floridino's in or about and between January 1999 and June 2002.

5.   In or about and between September 1998 and October 2001, the defendant QUENTIN QUINTANA, also known as "Christopher Quintana," together with others, owned the 30 Broad Street branch and managed and supervised its brokers without being registered to do so with the NASD.

6.   In or about and between October 2000 and October 2003, the defendants WILLIAM G. BROWN and GARY TODD owned Delta's Staten Island branch and managed and supervised its brokers without being registered to do so with the NASD.

7.   In or about and between October 2000 and October 2003, the defendant VLAD GOLDENBERG was an unlicensed broker employed at Delta's Staten Island branch.

The Fraudulent Scheme

8.   In or about and between June 1999 and October 2003, the defendants FRANK DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana," WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with others, devised, implemented, oversaw and participated in a fraudulent scheme to manipulate the market prices of the House Stocks.

9.   As a part of this scheme, the defendant FRANK DOLNEY, together with others, obtained several large blocks of GeneThera, Canterbury, E.Machinery and Floridino's common stock and stock warrants for little or no consideration.  As a further part of this scheme, an unindicted co-conspirator, together with

others, obtained control of a large block of AVRI common stock for little or no consideration.

10. As a further part of this scheme, the defendant FRANK DOLNEY, together with others, paid secret kickbacks, in the form of cash, free stock and other items of value, to the defendants QUENTIN QUINTANA, WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, in exchange for QUINTANA, BROWN, TODD and GOLDENBERG causing L.H. Ross and Delta customers to purchase the GeneThera, E.Machinery, Canterbury and Floridino's common stock and stock warrants at artificially inflated prices from DOLNEY and others.

11. As a further part of this scheme, the unindicted co-conspirator, together with others, paid secret kickbacks, in the form of cash and other items of value, to the defendants WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, in exchange for BROWN, TODD and GOLDENBERG causing Delta customers to purchase AVRI common stock at artificially inflated prices from the unindicted co-conspirator.

12. As a further part of this scheme, the defendants FRANK DOLNEY, QUENTIN QUINTANA, WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with others, created artificial market demand for the purpose of inflating the prices of the House Stocks. Among other deceptive and manipulative means, the defendants, together with others: (a) made and caused to be made materially false and fraudulent representations to L.H. Ross and

Delta customers in order to induce those customers to purchase the House Stocks; (b) used and caused to be used high pressure and deceptive sales tactics in order to induce L.H. Ross and Delta customers to purchase the House Stocks; (c) paid and accepted excessive, undisclosed commissions, including cash payments and other items of value, in exchange for brokers at L.H. Ross and Delta recommending and selling the House Stocks to retail customers; (d) made and caused to be made unauthorized trades of the House Stocks in L.H. Ross and Delta customer accounts; and (e) instructed unregistered brokers and cold callers routinely to misrepresent to L.H. Ross and Delta customers that they were registered brokers when selling the House Stocks.

13. After the prices of the House Stocks rose artificially as a result of these deceptive and manipulative techniques, the defendants FRANK DOLNEY, WILLIAM G. BROWN and GARY TODD, together with others, sold shares of the House Stocks at a substantial profit from nominee and other accounts that they controlled. The defendants WILLIAM G. BROWN, GARY TODD, QUENTIN QUINTANA and VLAD GOLDENBERG were also paid kickbacks in the form of a percentage of the proceeds of these sales in exchange for participating in the fraudulent scheme.

COUNT ONE
(Conspiracy to Commit Securities Fraud)

14.   The allegations contained in paragraphs 1 through 13 are repeated and incorporated as though fully set forth in this paragraph.

15.   In or about and between June 1999 and October 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana," WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), and, directly and indirectly, to (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the investing public, in connection with purchases and sales of the House Stocks, and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

16.   In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants FRANK DOLNEY, QUENTIN QUINTANA, WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG committed and caused to be committed, among others, the following:

<u>OVERT ACTS</u>

a.   On or about July 12, 1999, the defendant FRANK DOLNEY, together with others, sold approximately 27,000 shares of GeneThera common stock at a price of $6.63 per share through Fidra Holdings, Ltd. ("Fidra"), an entity controlled by DOLNEY and others.

b.   On or about August 20, 1999, the defendant FRANK DOLNEY, together with others, sold approximately 50,000 shares of Canterbury common stock at a price of $1.70 per share through Fidra.

c.   On or about October 7, 1999, the defendant FRANK DOLNEY, together with others, sold approximately 55,000 shares of GeneThera common stock at a price of $8.03 per share through Fidra.

d.   On or about December 8, 1999, the defendant FRANK DOLNEY, together with others, sold approximately 53,100 shares of Canterbury common stock at a price of $3.36 per share through Fidra.

e.   On or about December 10, 1999, the defendant FRANK DOLNEY, together with others, sold approximately 12,000 shares of Floridino's common stock at a price of $8.63 per share through Fidra.

f.   On or about January 11, 2000, the defendant FRANK DOLNEY, together with others, sold approximately 40,000 shares of GeneThera common stock at a price of $2.60 per share through Fidra.

g.   On or about February 7, 2000, the defendant QUENTIN QUINTANA caused a check for $45,000, which was drawn on a bank account maintained by Fidra, to be deposited into a bank account maintained by CBIZ Holdings, an entity controlled by QUINTANA.

h.   On or about February 11, 2000, the defendant QUENTIN QUINTANA caused a check for $50,000, which was drawn on a bank account maintained by Fidra, to be deposited into a bank account maintained by CBIZ Holdings.

i.   On or about April 28, 2000, the defendant FRANK DOLNEY, together with others, sold approximately 43,000 shares of Canterbury common stock at a price of $3.45 per share through Fidra.

j.   On or about May 2, 2000, the defendant FRANK DOLNEY, together with others, sold approximately 22,000 shares of

Floridino's common stock at a price of $8.81 per share through Fidra.

k.   On or about June 16, 2000, the defendant FRANK DOLNEY, together with others, sold approximately 27,000 shares of E.Machinery common stock at a price of $1.81 per share through Fidra.

l.   On or about July 14, 2000, the defendant FRANK DOLNEY, together with others, sold approximately 20,000 shares of Floridino's common stock at a price of $6.44 per share through Fidra.

m.   On or about January 26, 2001, the defendant FRANK DOLNEY, together with others, sold approximately 300,000 shares of E.Machinery common stock at a price of $2.48 per share through Fidra.

n.   On or about February 26, 2001, the defendant FRANK DOLNEY, together with others, sold approximately 130,000 shares of E.Machinery common stock at a price of $3.08 per share through Fidra.

o.   On or about April 5, 2001, the defendant VLAD GOLDENBERG, together with others, caused a customer who maintained a retail account at Delta's Staten Island branch to purchase approximately 10,000 shares of E.Machinery common stock at a price of $2.56 per share.

p.   On or about October 4, 2001, the defendants WILLIAM G. BROWN and GARY TODD, together with others, sold approximately 16,000 shares of Floridino's common stock at prices ranging between $2.50 per share and $2.55 per share through B&G Consulting, an entity controlled by BROWN and TODD.

q.   On or about October 10, 2001, the defendants WILLIAM G. BROWN and GARY TODD, together with others, sold approximately 10,000 shares of Floridino's common stock at a price of $2.80 per share through B&G Consulting.

r.   On or about October 12, 2001, the defendant FRANK DOLNEY, together with others, sold approximately 24,950 shares of Floridino's common stock at a price of $2.90 per share through Fidra.

s.   On or about October 16, 2001, the defendant FRANK DOLNEY sold approximately 18,500 shares of E.Machinery common stock at a price of $1.95 per share through Fidra.

t.   On or about October 16, 2001 the defendant VLAD GOLDENBERG, together with others, caused a customer who maintained a retail account at Delta's Staten Island branch to purchase 500,000 shares of Floridino's common stock and 500,000 of Floridino's stock warrants for a total investment of $1,000,000 through a private placement transaction.

u.   On or about October 22, 2001, the defendants WILLIAM G. BROWN and GARY TODD, together with others, sold

approximately 10,000 shares of Floridino's common stock at a price of $2.95 per share through B&G Consulting.

v.   On or about November 2, 2001, the defendants WILLIAM G. BROWN and GARY TODD, together with others, sold approximately 55,000 shares of Floridino's common stock at a price of $3.19 per share through B&G Consulting.

w.   On or about November 15, 2001, the defendant VLAD GOLDENBERG, together with others, caused a customer who maintained a retail account at Delta's Staten Island branch to purchase approximately 50,000 shares of Floridino's common stock at a price of $3.78 per share.

x.   On or about November 21, 2001, the defendant FRANK DOLNEY, together with others, sold approximately 47,155 shares of Floridino's common stock at a price of $4.27 per share through Fidra.

y.   On or about November 29, 2001, the defendant VLAD GOLDENBERG, together with others, caused a customer who maintained a retail account at Delta's Staten Island branch to purchase approximately 82,200 shares of Floridino's common stock at prices ranging from $5.30 to $5.36 per share.

z.   On or about September 16, 2003, the unindicted co-conspirator, together with others, sold approximately 8,800 shares of AVRI common stock at a price of

$4.36 per share through an account maintained in the name of Finter Bank Zurich.

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.)

<u>COUNT TWO</u>
(Securities Fraud - GeneThera)

17.  The allegations contained in paragraphs 1 through 13, 15 and 16 are repeated and incorporated as though fully set forth in this paragraph.

18.  In or about and between June 1999 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana," WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendants, together with others, did knowingly and willfully, directly and indirectly, (a) employ devices, schemes, and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as

a fraud and deceit upon members of the investing public, in connection with purchases and sales of GeneThera common stock, and by use of the means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT THREE
(Securities Fraud - Canterbury)

19.  The allegations contained in paragraphs 1 through 13, 15 and 16 are repeated and incorporated as though fully set forth in this paragraph.

20.  In or about and between June 1999 and October 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana," WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendants, together with others, did knowingly and willfully, directly and indirectly, (a) employ devices, schemes, and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which

they were made, not misleading; and (c) engage in acts,
practices, and courses of business which would and did operate as
a fraud and deceit upon members of the investing public, in
connection with purchases and sales of Canterbury common stock,
and by use of the means and instrumentalities of interstate
commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and
78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FOUR
(Securities Fraud - E.Machinery)

21.   The allegations contained in paragraphs 1 through
13, 15 and 16 are repeated and incorporated as though fully set
forth in this paragraph.

22.   In or about and between June 1999 and October
2001, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants FRANK
DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana,"
WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with
others, did knowingly and willfully use and employ manipulative
and deceptive devices and contrivances, directly and indirectly,
in violation of Rule 10b-5 of the Rules and Regulations of the
SEC (Title 17, Code of Federal Regulations, Section 240.10b-5),
in that the defendants, together with others, did knowingly and
willfully, directly and indirectly, (a) employ devices, schemes,
and artifices to defraud; (b) make untrue statements of material

fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit upon members of the investing public, in connection with purchases and sales of E.Machinery common stock, and by use of the means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FIVE
### (Securities Fraud - Floridino's)

23.    The allegations contained in paragraphs 1 through 13, 15 and 16 are repeated and incorporated as though fully set forth in this paragraph.

24.    In or about and between June 1999 and January 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FRANK DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana," WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with others, did knowingly and willfully use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the SEC (Title 17, Code of Federal Regulations, Section 240.10b-5), in that the defendants, together with others, did knowingly and

willfully, directly and indirectly, (a) employ devices, schemes,
and artifices to defraud; (b) make untrue statements of material
fact and omit to state material facts necessary in order to make
the statements made, in light of the circumstances under which
they were made, not misleading; and (c) engage in acts,
practices, and courses of business which would and did operate as
a fraud and deceit upon members of the investing public, in
connection with purchases and sales of Floridino's common stock
and stock warrants, and by use of the means and instrumentalities
of interstate commerce and the mails.

  (Title 15, United States Code, Sections 78j(b) and
78ff; Title 18, United States Code, Sections 2 and 3551 <u>et seq</u>.)

COUNT SIX
(Securities Fraud - AVRI)

  25.   The allegations contained in paragraphs 1 through
13, 15 and 16 are repeated and incorporated as though fully set
forth in this paragraph.

  26.   In or about and between February 2002 and October
2003, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG, together with
others, did knowingly and willfully use and employ manipulative
and deceptive devices and contrivances, directly and indirectly,
in violation of Rule 10b-5 of the Rules and Regulations of the
SEC (Title 17, Code of Federal Regulations, Section 240.10b-5),

18

in that the defendants, together with others, did knowingly and

willfully, directly and indirectly, (a) employ devices, schemes,

and artifices to defraud; (b) make untrue statements of material

fact and omit to state material facts necessary in order to make

the statements made, in light of the circumstances under which

they were made, not misleading; and (c) engage in acts,

practices, and courses of business which would and did operate as

a fraud and deceit upon members of the investing public, in

connection with purchases and sales of AVRI common stock, and by

use of the means and instrumentalities of interstate commerce and

the mails.

     (Title 15, United States Code, Sections 78j(b) and

78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT SEVEN<br>(Conspiracy to Commit Money Laundering)

     27.  The allegations contained in paragraphs 1 through

13, 15, 16, 18, 20, 22, 24 and 26 are repeated and incorporated

as though fully set forth in this paragraph.

     28.  In or about and between June 1999 and January

2003, both dates being approximate and inclusive, within the

Eastern District of New York and elsewhere, the defendants FRANK

DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana,"

WILLIAM G. BROWN and GARY TODD, together with others, did

knowingly and intentionally conspire to conduct financial

transactions affecting interstate and foreign commerce which in

fact involved the proceeds of specified unlawful activity, to wit, securities fraud, knowing that the property involved in such financial transactions represented proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of the specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of such proceeds in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNTS EIGHT THROUGH SIXTEEN
(Money Laundering)

29.  The allegations contained in paragraphs 1 through 13, 15, 16, 18, 20, 22, 24, 26 and 28 are repeated and incorporated as though fully set forth in this paragraph.

30.  On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants WILLIAM G. BROWN and GARY TODD, together with others, knowing that the property involved in financial transactions represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to wit, securities fraud, (a) with

20

the intent to promote the carrying on of the specified unlawful activity, and (b) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of such proceeds, in that the defendants transferred and caused to be transferred by wire and check funds in the approximate amounts listed below into a B&G Consulting bank account maintained at a Chase Manhattan Bank branch in Staten Island, New York, from accounts maintained in the names of the entities listed below at the banks and brokerage firms listed below:

| COUNT | DATE | ORIGINATING BANK/BROKER | SOURCE ENTITY | CHECK/WIRE TRANSFER AMOUNT |
|---|---|---|---|---|
| EIGHT | August 2, 2001 | Sierra Brokerage Services | Fidra Holdings, Ltd. | $50,000 |
| NINE | August 3, 2001 | Sierra Brokerage Services | Fidra Holdings, Ltd. | $40,000 |
| TEN | August 31, 2001 | Chase Manhattan | Basbun Food Corp. | $5,000 |
| ELEVEN | September 21, 2001 | HSBC Bank | Floridino's | $15,000 |
| TWELVE | October 5, 2001 | Chase Manhattan | Basbun Food Corp. | $7,500 |
| THIRTEEN | October 9, 2001 | Sierra Brokerage Services | Unified Telecom Services | $7,500 |
| FOURTEEN | October 12, 2001 | Sierra Brokerage Services | Unified Telecom Services | $7,500 |

| COUNT | DATE | ORIGINATING BANK/BROKER | SOURCE ENTITY | CHECK/WIRE TRANSFER AMOUNT |
|-------|------|-------------------------|---------------|----------------------------|
| FIFTEEN | November 2, 2001 | Marine Midland | Unique Food Concepts | $10,000 |
| SIXTEEN | November 2, 2001 | Marine Midland | RCI General Contracting | $10,000 |

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
FOR COUNTS ONE THROUGH SIX

31.    The United States hereby gives notice to the defendants FRANK DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana," WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG that, upon their conviction of any of the offenses charged in Counts One through Six, the Government will seek forfeiture in accordance with Title 18, United States Code, Sections 981(a)(1)(C) and 1956(c)(7)(A), and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

32.    If more than one defendant is convicted of any of the offenses charged in Counts One through Six, the defendants so convicted are jointly and severally liable for the forfeiture obligations described in paragraph 31 above.

33.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants FRANK DOLNEY, QUENTIN QUINTANA, WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the Government, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants FRANK DOLNEY, QUENTIN QUINTANA, WILLIAM G. BROWN, GARY TODD and VLAD GOLDENBERG up to the value of the forfeitable property described in subparagraphs 33(a) through 33(e) above.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

CRIMINAL FORFEITURE ALLEGATION
FOR COUNTS SEVEN THROUGH SIXTEEN

34.   The United States hereby gives notice to the defendants FRANK DOLNEY, QUENTIN QUINTANA, also known as "Christopher Quintana," WILLIAM G. BROWN and GARY TODD that, upon their conviction of any of the offenses charged in Counts Seven through Sixteen, the Government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), of all property involved in each offense in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, and all property traceable to such property as a result of the defendants' conviction or convictions of any or all of Counts Seven through Sixteen, for which the defendants are jointly and severally liable.

35.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants FRANK DOLNEY, QUENTIN QUINTANA, WILLIAM G. BROWN and GARY TODD:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

    (e)  has been commingled with other property which
cannot be divided without difficulty;

it is the intent of the Government, pursuant to Title 21, United
States Code, Section 853(p), as incorporated by Title 18, United
States Code, Section 982(b)(1), to seek forfeiture of any other
property of the defendants FRANK DOLNEY, QUENTIN QUINTANA,
WILLIAM G. BROWN and GARY TODD, up to the value of the
forfeitable property described in subparagraphs 35(a) through
35(e) above.

        (Title 18, United States Code, Section 982(a)(1))

                                        A TRUE BILL

                                        _____
                                             FOREPERSON

_____
ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F #2003R02536
FORM DBD-34

# UNITED STATES   DISTRICT COURT

EASTERN District of NEW YORK

*Criminal Division*

## THE UNITED STATES OF AMERICA

*vs.*

Frank Dolney, et al.,
**Defendants.**

## INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78 ff; T. 18,
U.S.C., §§ 371, 981(a)(1)(c), 982(a)(1),
1956 (a)(1)(a)(i), 1956 (a)(1)(B)(i),
1956(h), 2 and 3551 et seq.; T 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461 (c))

A true bill.

_____
                              *Foreman*

Filed in open court this _____

of _____ A.D. 20 _____

_____ *day,*

_____
                              *Clerk*

Bail, $ _____

_____

AUSA Michael Asaro , (718) 254-4839

# INFORMATION SHEET

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JAN 2 6 2005 ★

**BROOKLYN OFFICE**

1.  Title of Case:   United States v. Frank Dolney, et. al, 04-CR-159 (S-1)(NGG)

2.  Related Magistrate Docket Number(s)          04-CR-159

    None ( X )

3.  Arrest Date: _____

4.  Nature of offense(s):   X      Felony
                            ☐      Misdemeanor

5.  Related Civil or Criminal Cases - Title and Docket No(s).  (Pursuant to Rule 50.3 of the Local E.D.N.Y. Division of Business Rules):_____ Superseder to 04-CR-159 (NGG)

6.  Projected Length of Trial:    Less than 6 weeks    ( X )
                                  More than 6 weeks    ( )

7.  County in which crime was allegedly committed: _____ Brooklyn _____
    (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.  Has this indictment been ordered sealed?              ( ) Yes  (X) No

9.  Have arrest warrants been ordered?                    ( ) Yes  (X) No

10. Is a capital count included in the indictment?        ( ) Yes  (X) No

ROSLYNN R. MAUSKOPF
UNITED STATES ATTORNEY

By: _____

Michael A. Asaro
Assistant U.S. Attorney
(718) 254-4839

Rev. 10/01/03